UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:23-cr-00030-CLC-CHS |
| v. ) | |
| ) | |
| O'SHAE SMITH ) | |

## REPORT AND RECOMMENDATION

**I. Introduction**

This matter is before the Court upon Defendant O'Shae Smith's Motion to Suppress [Doc. 17] which the District Court has referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). On September 9, 2022, Chattanooga Police Department Officer Darnell Bryant arrested Defendant "for possession of fentanyl and heroin, evading arrest, and driving without a license." [Doc. 17 at 1]. Defendant seeks to suppress the fruits of the seizure and Defendant's statements. [*Id.*]. For the reasons stated herein, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

**II. Facts**

The Court conducted an evidentiary hearing on January 10, 2024. [*See* Doc. 26]. Officer Bryant testified at the hearing and the footage from his body camera was admitted into evidence. [*See* Doc. 27].

On December 2, 2021, Officer Bryant encountered Defendant while Defendant was not driving. [Doc. 28 at 1-2]. When Officer Bryant ran Defendant's name through the Watson system,[1] it generated a report indicating that Defendant did not have a valid driver's license. [*Id.*]

---

[1] The Watson system is an electronic database utilized by the Chattanooga Police Department. *See* [Docs. 28 at 1-2 and 29 at 1].

Approximately seven months later, on June 29, 2022, Officer Bryant stopped Defendant while Defendant was driving. [*Id.*]. Once again, when Officer Bryant ran Defendant's name through the Watson system it indicated that Defendant did not have a valid driver's license. [*Id.*].

On September 9, 2022, Officer Bryant was driving east on 38th Street when he saw Defendant pass him driving west on 38th Street. [Hearing Testimony at 24:35; Docs. 17 at 1 and 28 at 1]. Officer Bryant did not activate his lights or siren but turned around to follow Defendant because he believed Defendant did not have a valid driver's license. [Hearing Testimony at 7:50; Doc. 21 at 1]. When Officer Bryant caught up to Defendant, Defendant had already parked and exited his vehicle. [Hearing Testimony at 8:05]. Officer Bryant exited his own vehicle and said, "Mr. Smith, come here." [Pl. Ex. 1 (Body Cam Footage) at 0:30]. Defendant replied, "Man, what's up man?" [*Id.* at 0:33]. Officer Bryant said, "Come over here, man. You ain't got no valid driver's license man, you know this." [*Id.* at 0:36].

Defendant argued with Officer Bryant for about a minute and a half, then suddenly turned and ran. [*Id.* at 2:00; Hearing Testimony at 12:20]. Officer Bryant pursued Defendant. [*Id.*] When Officer Bryant made contact with Defendant, Defendant "stumbled and got back up, and reached in the bag and threw a bunch of pills in the air." [Hearing Testimony at 12:34]. Officer Bryant was subsequently able to physically detain Defendant. [*Id.* at 12:50]. After placing Defendant in a patrol vehicle, officers recovered the items he had thrown into the air. [*Id.* at 13:03]. These items included 23.06 grams of fentanyl powder and 19.29 grams of fentanyl pills. [Doc. 21 at 2].

## III. Discussion

Defendant asserts that Officer Bryant did not have reasonable suspicion of a crime to conduct a valid *Terry* stop. [Doc. 28 at 3-6]. He claims that the information from the Watson system was too stale and unreliable to provide reasonable suspicion. [*Id.*].

"[W]here a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances." *United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004). Such an encounter is known as a *Terry* stop. [*See id.* at 584-85]. To meet reasonable suspicion, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Courts "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted).

Here, Officer Bryant knew—based on queries of the Watson system that he made 277 days, and then 72 days, before he saw Defendant driving on 38th Street—that Defendant did not have a valid driver's license. In *United States v. Greene*, the Court considered whether reasonable suspicion existed when an officer had encountered the defendant to be driving with a suspended license twice previously, the second encounter occurring 72 days prior to the defendant's arrest. No. 1:12-CR-129-14, 2014 WL 1745648 (E.D. Tenn. May 1, 2014). In that case, the Magistrate Judge found that the officer had "a reasonable and articulable suspicion that criminal activity was afoot." [*Id.* at *1].[2]

Similarly here, Officer Bryant had knowledge from two previous encounters that Defendant had no valid driver's license according to the Watson system. Significantly, the second of these encounters was 72 days prior to Defendant's arrest. Defendant makes much of the fact that Officer Bryant never actually asked Defendant to produce a valid license on any of the three encounters. This argument is unavailing. The question is whether Officer Bryant's reliance on the

---

[2] In *Greene*, the Magistrate Judge later found that probable cause did not exist due to staleness because new evidence showed that the second encounter was actually 160 days prior to the defendant's arrest. *Id.* at *2.

information from the Watson system was reasonable for suspecting that Defendant was driving without a valid license, not whether Defendant was unable to produce a valid license.[3] Defendant argues that "Officer Bryant was never able to explain where the information from Watson came from or its significance, but only that he relied on it as a professional policeman in the course of his work." [Doc. 28 at 5]. But that reliance as a professional policeman is precisely the point. Officer Bryant testified that the Watson system is utilized by the Chattanooga Police Department to check for things such as outstanding warrants, persons of interest, driver's license status, etc. [Hearing Testimony at 4:38]. Officer Bryant and other professional police officers for the Chattanooga Police Department rely on the Watson system as a part of their job. The Court finds that reliance by Officer Bryant on the information returned by the Watson system was reasonable.

Defendant makes a convoluted argument that the inquiry into staleness of the information should conclude that "the information relied on by Officer Bryant is actually 277 days old and stale." [Doc. 28 at 6]. This argument is unavailing. Both prior encounters with Mr. Smith provided data points to Officer Bryant that are relevant to the staleness inquiry. As a clear illustration, the Court in *Greene* found that a difference in the timing of the second encounter changed the outcome of its decision regarding staleness. [*See* supra, n. 2]. But if Defendant's argument in the present case were credited, the timing of the second encounter would be irrelevant to the Court's analysis.

Here, it is uncontroverted that Officer Bryant had two pre-arrest encounters with Defendant which armed him with information that Defendant did not have a valid driver's license—with the second encounter occurring only 72 days before he saw Defendant driving and confronted him.

---

[3] Defendant cites Tennessee Code Annotated 55-50-351 to support his claim that he could only be violating the law if he did not produce a valid license [Doc. 28 at 2]. The Court does not accept this interpretation but more importantly it is not on point. The inquiry here is not about whether there was proof that he was violating T.C.A. 55-50-351. The question is whether it was reasonable for Officer Bryant to believe he was violating T.C.A. 55-50-351 based on all the circumstances, including information gleaned from the Watson system on two prior occasions combined with his experience as a law enforcement officer.

Under these circumstances, the Court is persuaded (much like the Court in *Greene*) that Officer Bryant possessed reasonable suspicion to conduct a *Terry* stop. Further, the information upon which he relied was reliable and not stale. Then, when Defendant fled on foot, Officer Bryant had probable cause to arrest Defendant. *See United States v. Dotson*, 49 F.3d 227, 230 (defendant's attempt to flee a *Terry* stop "ripened [the officer's] reasonable suspicion into probable cause to arrest [the defendant]"); *Williams v. United States*, 632 F. App'x 816, 823 (6th. Cir. 2015) ("because officers had reasonable suspicion of criminal activity. . . , they had probable cause to arrest [defendant] once he fled.").

Assuming *arguendo* that Officer Bryant lacked reasonable suspicion to conduct a *Terry* stop, Defendant's flight provided independent grounds for detaining Defendant. The Sixth Circuit stated that "it is widely recognized that if a suspect's response to an illegal stop is itself a new, distinct crime, then the police constitutionally may arrest the suspect for that crime." *United States v. Allen*, 619 F.3d 518, 526 (6th Cir. 2010). In *Allen*, the Court noted that "the act of fleeing from police officers constituted a new, distinct crime that rendered evidence subsequently seized admissible." [*Id.*]. Similarly, even if the *Terry* stop by Officer Bryant was improper as argued by Defendant, Defendant's flight constituted a new, distinct crime that would cure the deficiency.

## IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED**[4] that Defendant's Motion to Suppress [Doc. 17] be **DENIED.**

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).