UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No: 1:23-CR-30 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| O'SHAE SMITH | ) |

# **M E M O R A N D U M**

This matter is before the Court on the report and recommendation (the "R&R") of Magistrate Judge Christopher H. Steger, recommending the Court deny Defendant's motion to suppress evidence against him resulting from his September 9, 2022, arrest. (Doc. 30.) Defendant objects to the Magistrate Judge's factual finding that the information on which the arresting officer acted was not stale. (Doc. 34.) The United States (the "Government") opposes the objection. (Doc. 35.)

The Court has reviewed the transcript of the evidentiary hearing before the Magistrate Judge, the exhibits introduced at the hearing, and the briefs the parties filed before and after the R&R issued. The Court will **OVERRULE** Defendant's objection (Doc. 34) and **ACCEPT** the R&R (Doc. 30). Defendant's motion to suppress (Doc. 17) will be **DENIED**.

**I. BACKGROUND**

The R&R begins with a summary of the relevant facts. (Doc. 30 at 1–2.) There are no objections to this summary. The Court therefore incorporates Section II of the R&R by reference.

In short, the facts show three contacts between Defendant and Officer Darnell Bryant of the Chattanooga Police Department (the "CPD"). On December 2, 2021, Officer Bryant ran Defendant's name through the Watson system, an electronic database the CPD uses, which showed Defendant did not have a valid driver's license. On June 29, 2022, Officer Bryant ran Defendant's

name through the Watson system again, this time during a traffic stop. The system again indicated Defendant did not have a valid license. Third, Officer Bryant saw Defendant driving again on September 9, 2022. Believing but not knowing that Defendant still did not have a driver's license, Officer Bryant caught up to Defendant after Defendant had parked and left his vehicle. The two argued for a minute and a half before Defendant fled. Defendant tossed away what turned out to be fentanyl powder and fentanyl pills. Officer Bryant arrested Defendant. This encounter took place 277 days after Officer Bryant's December 2021 check of the Watson system and 72 days after his June 2022 check of the Watson system.

Defendant was indicted on March 28, 2023, for possession with intent to distribute forty grams or more of a mixture and substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (*See* Doc. 1.)

Defendant filed a motion to suppress on October 25, 2023. (Doc. 17.) The Government responded in opposition on November 13, 2023. (Doc. 21.) The Magistrate Judge held a hearing on January 10, 2024. (Doc. 25.) Defendant filed a post-hearing memorandum on January 24, 2024 (Doc. 28), and the Government responded on February 1, 2024. The R&R issued on March 22, 2024. (Doc. 30.) The R&R finds Officer Bryant had reasonable suspicion to conduct a *Terry* stop of Defendant because the Watson information on which he relied was not stale. (*Id.* at 3–5.) The R&R also finds that, even if Officer Bryant lacked reasonable suspicion for a *Terry* stop, "Defendant's flight provided independent grounds for detaining Defendant." (*Id.* at 5.) Defendant objects to the R&R on the ground that its "finding is erroneous because the officer is relying on stale information both in terms of what was known and when it was known by Officer Bryant." (Doc. 34 at 8.)

2

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R or the specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court to rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him or her in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

In resolving objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III. ANALYSIS

Defendant objects only to the R&R's staleness finding. (*See* Doc. 30 at 8–11.) The Court reviews this finding *de novo*. *See* 28 U.S.C. § 636(b)(1)(C).

"[T]he issue of staleness depends not on an arbitrary time limitation, but rather on the nature of the crime, the criminal, the place to be searched and the thing to be seized." *United States v. Greene*, No. 1:12-CR-129-14, 2014 WL 1745648, at *3 (E.D. Tenn. May 1, 2014) (citing *United States v. Spikes,* 158 F.3d 913, 923–24 (6th Cir.1998)). "In situations where the criminal activity is of an ongoing nature, it will take longer for the information to become stale." *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) (citing *United States v.*

3

*Greene,* 250 F.3d 471, 480 (6th Cir. 2001) ("Evidence of ongoing criminal activity will generally defeat a claim of staleness.")). "Driving without a valid license is a continuing offense." *Id*.

"[T]here is no bright line rule as to the length of time that must pass before information becomes stale." *United States v. Bunton*, No. 2:09-CR-106, 2010 WL 2082642, at *4 (E.D. Tenn. May 24, 2010). In *Sandridge*, the Court of Appeals for the Sixth Circuit found that the officer had a reasonable basis to suspect the defendant lacked a valid license twenty-two days after last checking the status of the defendant's license. 385 F.3d at 1036. In *United States v. Pierre*, an officer stopped the defendant based on outdated information from other officers that the defendant's license had been suspended. 484 F.3d 75, 83–84 (1st Cir. 2007). The Court of Appeals for the First Circuit found the defendant's license "was suspended on an ongoing basis, rather than for a short period of time, making the suspicion that it was still inactive some five months later more reasonable." *Id*. at 84. In *United States v. Laughrin*, the Court of Appeals for the Tenth Circuit held an officer did not have reasonable suspicion to stop the defendant's vehicle for a suspended driver's license where the officer's most recent stop of the defendant was at least twenty-two weeks before the stop at issue. 438 F.3d 1245, 1247–48 (10th Cir. 2006).

Defendant's objection relies in significant part on *United States v. Greene*, 2014 WL 1745648, which was factually nearly identical to the pending case. (*See* Doc. 30 at 3–6.) In *Greene*, an officer made a traffic stop based on the officer's memory of two previous encounters with the defendant, Randy Greene, in which the defendant had been driving on a suspended license. *Greene*, 2014 WL 1745648, at *1. Mr. Greene moved to suppress the evidence that had resulted from the stop. *Id.* The Magistrate Judge initially recommended denying the motion to suppress based on her finding that reasonable suspicion for the stop existed where the officer testified that the most recent of the two earlier stops had been 72 days earlier. *Id.* However, the parties later

4

stipulated that the officer's most recent traffic stop of Mr. Greene had been 160 days before the stop at issue, not 72 days before. *Id.* at 2. The Magistrate Judge then issued a second, revised, recommendation for the Court to suppress the evidence. *Id.* The Magistrate Judge "found that the difference in the length of time which had elapsed between the later of the prior encounters . . . fundamentally altered her analysis," rendering the information on which the officer relied stale and reducing what the officer had from reasonable suspicion "to a mere 'hunch.'" *Id.*

The Court in *Greene* accepted and adopted the second recommendation and granted the defendant's motion to suppress. *Id.* at *5. The Court did so in part based on the 160 days that had passed between the previous stop and the stop in question: "Given the significant time period that passed between the officer's knowledge of Mr. Greene's violation and when the stop was made, the Court finds that the information was too stale to justify stopping Mr. Greene on the belief that a suspension was still in effect." *Id.* at *4. The Court also considered that the officer had incorrectly recalled the amount of time elapsed since the most recent traffic stop of Mr. Greene: "In this court's view, this failure of memory makes it somewhat less likely that whatever information Officer Payne may have recalled about Mr. Greene of that date was adequately specific, articulable and recent to support a traffic stop." *Id.* The Court concluded whatever information the officer had actually recalled was too stale to form reasonable suspicion, finding it "[m]ore likely . . . [the officer] simply identified Mr. Greene as an individual with a known criminal history whom he had encountered previously." *Id.*

In his objection to the time component of the R&R's staleness finding, Defendant argues that "finding that information is stale after 22 weeks [*i.e.*, 160 days, the actual gap in *Greene*] but is reliable after 11 weeks [*i.e.*, 72 days, the first indicated gap in *Greene*] seems arbitrary and without any expression of reasonableness." (Doc. 34 at 10.) A decision may be "arbitrary" if it

5

"depend[s] on individual discretion," if it is "of, relating to, or involving a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures," if it is "founded on prejudice or preference rather than on reason or fact," or if it "involv[es] the unrestrained exercise of will." *Arbitrary*, *Black's Law Dictionary* (12th ed. 2024). It is not arbitrary for either the Magistrate Judge or this Court to follow the reasoning of *Greene*. An example of an arbitrary decision would be reaching a different conclusion about staleness based on two sets of facts between which there are no significant differences, such as the actual facts in this case and the first purported set of facts in *Greene*. Nor was the change between the first recommendation and the second recommendation in *Greene* arbitrary; under all the circumstances, more than doubling the age of the officer's information in *Greene*, from over two months to over five months, is a reasonable distinction from which to reach a different conclusion.

Defendant's second argument is that the source of Officer Bryant's information rendered it stale, in that "what is being relied on by Officer Bryant is not his police work or investigation showing the defendant had no license, but rather on information found in the 'Watson' system." (Doc. 34 at 10.) Defendant points out that Officer Bryant did not ask Defendant to produce identification [presumably in December 2021 or June 2022], so Officer Bryant's suspicion that Defendant lacked a license was based solely on the Watson system. (*Id*.) He argues the Government did not present any evidence "to show why it would be reasonable for Officer Bryant to rely on the information in the 'Watson' system." (*Id*. at 11.) He also contends the date Officer Bryant accessed the Watson system, and whether it was close in time to the September 9, 2022, *Terry* stop, has no bearing on the reliability of the data retrieved. (*Id*. at 10–11.) This argument is not about staleness but rather the reliability of the information—to which Defendant did not expressly object. (*See* Doc. 34 at 2.) Regardless, Officer Bryant and other professional police

6

officers with CPD rely on the Watson system as part of their job, and Officer Bryant's reliance on the information obtained through Watson was reasonable. (*See* Doc. 31 [Hrg. Trans.] at 7–8 (Officer Bryant testifies to CPD's regular use of Watson system).)

It is inherent in the concept of staleness that the less time has passed, the more likely information is to still be accurate. Here, there was no change in Defendant's license status in the Watson system during the seven months between December 2, 2021, and June 29, 2022. Rather than showing Defendant's license was suspended, it showed he did not have a license, making it even less likely that Defendant's license status had changed between June 29, 2022, and September 9, 2022, because obtaining a license requires affirmative action. Officer Bryant had personally stopped Defendant before and checked the status of his license. *Cf. Bunton*, No. 2:09-CR-106, 2010 WL 2082642, at *4 (weighing the fact the officer had never stopped defendant nor personally checked the status of his license against reasonableness). There is no evidence Officer Bryant inaccurately recalled the timing or output of the Watson system in December 2021 or June 2022. *Cf. Greene*, 2014 WL 1745648, at *4. It was reasonable for Officer Bryant to think it likely that Defendant had still not obtained his license in the 72 days between June 29, 2022, and the *Terry* stop on September 9, 2022.

IV. **CONCLUSION**

After reviewing the record, the Court will **ACCEPT** the R&R (Doc. 30) and **DENY** Defendant's motion to suppress (Doc. 17).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**